# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                              NEWS RELEASE #040

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **7th day of September, 2018**, are as follows:

**BY JOHNSON, C.J.**:

**2016-KA-0559**     **STATE OF LOUISIANA v. BRIAN DOUGLAS HORN (Parish of Desoto)**

This is a direct appeal under La. Const. art. V, § 5(D) by defendant, Brian Douglas Horn. On April 12, 2010, defendant was indicted by a grand jury in DeSoto Parish for the first-degree murder of 12-year-old Justin Bloxom. Following the close of evidence at trial, a jury unanimously found defendant guilty as charged and, at the conclusion of the penalty phase of the trial, recommended a sentence of death. The district court sentenced defendant to death in accordance with that recommendation. In his appeal to this court, defendant raises seventy assignments of error. Finding merit in defendant's assignment of error asserting a violation of his Sixth Amendment right to counsel, we vacate defendant's conviction and sentence and remand this matter to the district court for a new trial.

DEFENDANT'S CONVICTION AND SENTENCE ARE VACATED; REMANDED TO THE DISTRICT COURT FOR A NEW TRIAL.

Retired Judge Burrell Carter assigned as Justice ad hoc, sitting for Crichton, J., recused.

WEIMER, J., additionally concurs and assigns reasons.
GUIDRY, J., additionally concurs for the reasons assigned by J. Weimer.
CRICHTON, J., recused.

SUPREME COURT OF LOUISIANA

No. 2016-KA-0559

STATE OF LOUISIANA

VERSUS

BRIAN DOUGLAS HORN

ON APPEAL
FROM THE FORTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF DESOTO

**JOHNSON, Chief Justice[1]**

This is a direct appeal under La. Const. art. V, § 5(D) by defendant, Brian Douglas Horn. On April 12, 2010, defendant was indicted by a grand jury in DeSoto Parish for the first-degree murder of 12-year-old Justin Bloxom. Following the close of evidence at trial, a jury unanimously found defendant guilty as charged and, at the conclusion of the penalty phase of the trial, recommended a sentence of death. The district court sentenced defendant to death in accordance with that recommendation. In his appeal to this court, defendant raises seventy assignments of error. Finding merit in defendant's assignment of error asserting a violation of his Sixth Amendment right to counsel, we vacate defendant's conviction and sentence and remand this matter to the district court for a new trial.

### FACTS AND PROCEDURAL HISTORY

On March 29, 2010, 12-year-old Justin Bloxom was staying overnight at a friend's house in Stonewall, Louisiana, and texting with a person he believed to be

---

[1] Retired Judge Burrell Carter assigned as Justice ad hoc, sitting for Crichton, J., recused.

1

a 14-year-old girl. The "girl" urged Justin to sneak out of the house so that the two could meet for a sexual encounter, and texted that she would send a taxi to get him. In reality Justin was texting defendant, Brian Horn. Shortly after three o'clock in the morning of March 30, 2010, Justin left his friend's house and climbed into defendant's taxi. Defendant leased and drove a green Action Taxi, Cab M-28. The last text message sent by Justin on March 30, 2010 at 3:13 a.m. stated "Cab died." That message was received by defendant's cell phone.

Later that morning, Justin's friend reported him missing. Sheriff's deputies arrived at the friend's home and learned from neighbors that a green Action Taxi Cab was seen in the neighborhood the night before. Additionally, another officer informed the investigating deputies that he had noticed a green Action Taxi cab parked on the side of the road on US Highway 171 in the very early hours of the morning and had stopped to give aid. The driver of the taxi, later identified by the officer as Brian Horn, advised the officer that he had run out of gas and lost his key, and someone from the taxi company was bringing him another key. Several other witnesses confirmed seeing the taxi on the side of the road in the early morning hours and recalled speaking to defendant, who informed them that he had run out of gas and lost his keys. Investigating officers subsequently searched the wooded area on the side of Highway 171 where defendant's taxi had been stopped and found Justin's body in a shallow pool of water 30-40 yards from the highway. The key to defendant's taxi was later found by metal detector in the same general area.

Defendant's brother, Kevin Horn, learned defendant was a person of interest in Justin's murder later that day. He accompanied defendant to Action Taxi, where defendant returned the taxi after cleaning it out. Kevin then drove defendant to the police station. Kevin gave police officers consent to search his vehicle, which

resulted in the seizure of evidence, including an AT&T SIM card belonging to defendant.

On April 12, 2010, defendant was indicted by a grand jury in DeSoto Parish for first-degree murder. In its Bill of Particulars, the state outlined its intent to prove defendant committed first-degree murder pursuant to La. R.S. 14:30(A)(1) while engaged in the perpetration or attempted perpetration of aggravated kidnapping or second degree kidnapping. Specifically, that statutory provision defines first-degree murder as the killing of a human being:

> (1) When **the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping**, aggravated escape, aggravated arson, aggravated or first degree rape, forcible or second degree rape, aggravated burglary, armed robbery, assault by drive-by shooting, first degree robbery, second degree robbery, simple robbery, terrorism, cruelty to juveniles, or second degree cruelty to juveniles.

(Emphasis added). La. R.S. 14:44 addresses the crime of "aggravated kidnapping," and provides, in relevant part:

> Aggravated kidnapping is defined as "the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
>
> (1) The forcible seizing and carrying of any person from one place to another; or
>
> (2) The enticing or persuading of any person to go from one place to another; or
>
> (3) The imprisoning or forcible secreting of any person.

Likewise, La. R.S. 14:44.1 provides for second-degree kidnapping:

> A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
>
> (3) **Physically injured or sexually abused**;

3

B. For purposes of this Section, kidnapping is:

(1) The forcible seizing and carrying of any person from one place to another; or
(2) **The enticing or persuading of any person to go from one place to another**; or

(3) The imprisoning or forcible secreting of any person.

(Emphasis added).

At trial, the state presented evidence of defendant's guilt including: forensic evidence of the SIM card revealing explicit text messages sent from defendant's cell phone to Justin's cell phone; evidence of a latent fingerprint from the taxi that matched Justin; and autopsy results showing Justin died of suffocation, with possible strangulation. The coroner, Dr. James Traylor, testified Justin died from being smothered, and opined that the perpetrator smothered Justin while on Justin's back. Dr. Traylor identified several areas of "petechiae" or ruptured blood vessels in Justin's eyes and on his face and forehead, which would have required the perpetrator to apply pressure to some part of the body to prevent the drainage of blood to the heart. Dr. Traylor identified an abraded contusion on the inside of Justin's mouth consistent with the perpetrator compressing his lips and mouth against his braces. Dr. Traylor also described numerous abrasions on Justin's body and testified they were anti-mortem wounds. In sum, the state presented photos and testimony from Dr. Traylor that (1) Justin exhibited injuries on his neck, face, hands, back shoulder, and torso; (2) the injuries occurred before death; and (3) the injuries were not solely attributable to smothering. The state also presented testimony from defendant's wife and another adult woman regarding their sexual relations with defendant, with the state eliciting testimony that defendant sometimes choked them during consensual sex. Defendant's wife testified they were "swingers" and

4

sometimes engaged in sexual relations with other adult men and women. The other woman testified defendant suggested that a "younger" man join them in sexual activities.

During the trial, defense counsel conceded defendant killed Justin. However, defense counsel argued that the jury could not find defendant guilty of first-degree murder because the state failed to prove defendant had specific intent to kill and failed to prove defendant was engaged in an aggravated kidnapping or a second-degree kidnapping when Justin died. The defense rested in the culpability phase of the trial without calling any witnesses.

A unanimous jury found defendant guilty of first-degree murder and determined defendant should be sentenced to death. The matter is now before this court on defendant's direct appeal under La. Const. art. V, § 5(D).

## DISCUSSION

### Sixth Amendment Violation (Assignment of Error #43)

Defendant argues his Sixth Amendment right to counsel was violated when his attorneys conceded his guilt over his explicit objection. We find this assignment of error has merit, and requires us to vacate defendant's conviction and sentence.

The Sixth Amendment guarantees the accused in a criminal proceeding the right to have "the Assistance of Counsel for his defence." U.S. Const. amend. VI. It "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed. 2d 562 (1975). "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." 422 U.S. at 819-20 (footnote omitted). Implicit in this right is the accused's authority "to make certain fundamental decisions regarding the case, as to whether

5

to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed. 2d 987 (1983). However, certain other decisions, such as decisions relative to trial management belong to counsel:

> As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney. Thus, decisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence. Absent a demonstration of ineffectiveness, counsel's word on such matters is the last.

*New York v. Hill*, 528 U.S. 110, 115, 120 S.Ct. 659, 664, 145 L.Ed. 2d 560 (2000) (internal quotations and citations removed).

The issue of whether the decision to admit guilt as part of the defense objective belongs to counsel or to the accused was recently addressed by the United States Supreme Court in *McCoy v. Louisiana*, -- U.S. --, 138 S. Ct. 1500 (2018). In *McCoy*, defense counsel, over defendant's objections, told the jury that defendant was guilty of the triple murder of his family members, but sought leniency in the penalty phase due to defendant's serious mental and emotional issues. McCoy testified in his own defense maintaining his innocence by asserting an implausible alibi defense. 138 S.Ct. at 1506-07. The jury found defendant guilty of three counts of first-degree murder and sentenced defendant to death. *Id*. at 1507. This court affirmed the convictions and sentence. *State v. McCoy*, 14-1449 (La. 10/19/16), 218 So. 3d 535, *cert. granted in part*, 138 S.Ct. 53, 198 L.Ed. 2d 781 (2017), and *rev'd and remanded*, 138 S.Ct. 1500 (2018). In reversing this court's ruling, the Supreme Court considered whether it is unconstitutional to allow defense counsel to concede guilt over the defendant's unambiguous objection:

6

We hold that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Guaranteeing a defendant the right "to have the Assistance of Counsel for his defence," the Sixth Amendment so demands. With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.

*Id*. at 1505. The Court reasoned that "just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a capital trial." 138 S.Ct. at 1508.

In this case, Mr. Horn argues his Sixth Amendment right to counsel was violated when his attorney conceded his guilt over his explicit objection. The record demonstrates that defendant's attorney admitted that defendant killed Justin and also suggested to the jury that the evidence supported a finding that he molested, or attempted to molest Justin. Counsel specifically told the jury he was not asking them to find defendant "not guilty," and further stated that the facts fit second-degree murder or manslaughter. The record further demonstrates that Mr. Horn disagreed with his counsel's decision to concede guilt as part of the defense strategy and that defendant made the district court aware of the disagreement both before and during the trial.

On February 13, 2013, during the pre-trial stage of the case, defendant filed a *pro se* "Motion for Evidentiary Hearing on the Defendant's Claims of Ineffective Assistance of Counsel with Incorporated Memorandum of Law" wherein defendant asserted that his defense had been refused by his attorneys. During a pre-trial hearing

7

on February 20, 2013, defense counsel and the court discussed defendant's motion and counsel's refusal to use the defense requested by defendant, but the court refused to get involved in the dispute and dismissed the motion:

> Counsel: I have one question for you. Perhaps you're not the right person. Perhaps I need to ask somebody in Baton Rouge. I read his pro se motion and it was denied. One of the things he said in there is that I didn't want to use his defense in the guilt phase. I did not want to use the defense he wants to use in the guilt phase. Now, am I supposed to do what I think is best as an attorney for my client or am I supposed to be a puppet and do exactly what he wants me to do on these appointed cases? ***

> Court: [] The allegations in the motions with regard to you are things that no court can rule on. I cannot get in the middle of the attorney/client privilege, communication, non-communication, is it enough, is it not enough. The only thing that I can judge, as I understand, are Washington versus Strickland and the progeny is the performance at trial and the results as compared to the amorphous standard out there of the criminal defense counsel in capital cases. That's all. And that motion did not even come close to approaching that. *** I think that is going to be something you and Mr. Gorley are going to have to sit down with the bosses and make the tactical decision and the case, right or wrong, is contingent upon that. And some, either this court or another reviewing court will have to make that decision whether that was the right or wrong decision. I can't, you know, I can't stop it.

During his closing argument, defense counsel specifically stated to the jury:

- "We have never contested any of that, none of it. The only thing that we have contested is the intent, the specific intent. The judge will instruct you that specific intent is an element of the crime of first-degree murder. I'm not going to ask you to like Brian Horn because what he did was awful. It was awful. Sending those text messages is unforgivable. That's not what he's charged with. He's charged with first-degree murder, a crime for which he could get the death penalty. They have to prove specific intent. They didn't prove it, and I'll get to that in a minute."

- "Nobody knows what happened. Nobody knows what happened out on 171 when the cab – when they ran out of gas. We know that Brian Horn killed Justin Bloxom."

- "I'm not asking you to let him walk the streets. I'm not asking you to find him 'not guilty.'"

8

- "Look, I'm not asking you to let him go. I'm not asking you to let him go. I never once stood up here and said 'Find him not guilty.' I'm asking you to find him not guilty of first-degree murder I mean, I think the facts fit manslaughter, but if you don't want to accept that because for whatever reason, you can convict him of second-degree murder."

- "Okay, I know y'all are tired of hearing me. We contested nothing in this case. We admitted everything except that they couldn't prove it was a first-degree murder, and they haven't proved it."

- Defense counsel argued again to the jury that he was not asking them to find defendant "not guilty," but asking them to find defendant not guilty of first-degree murder.

- Defense counsel read the definitions of indecent behavior with a juvenile and molestation to the jury.

- Defense counsel suggested a scenario to the jury wherein Justin realized there was no girl involved, resulting in a struggle; counsel suggested an alternative wherein defendant could have tried to molest Justin, resulting in struggle.

Following closing arguments, defendant objected to his counsel's concession of guilt, filing "Defendant's Pro Se Formal Written Objections of Trial Errors & Ineffective Assistance of Counsel and Motion for Relief Therefrom." Defendant objected to counsel's closing arguments conceding guilt to any of the lesser included offenses when he specifically instructed counsel not to do so. Defendant stated he instructed counsel only to make an argument of accidental killing via the negligent homicide statute. Defendant further objected to counsel's closing argument wherein he suggested defendant was guilty of indecent behavior with a juvenile and/or child molestation. The district court denied defendant's objections without a hearing.

In this court, defendant asserts the Supreme Court's decision in *McCoy* is dispositive and requires a reversal of his conviction. By contrast, the state suggests *McCoy* is not controlling in this case because defendant did not claim outright innocence and instructed his attorneys to make an argument for accidental killing under the negligent homicide statute. After review of the record and considering the

9

Court's decision in *McCoy*, we reject the state's argument and decline to restrict application of the holding in *McCoy* solely to those cases where a defendant maintains his absolute innocence to any crime. *McCoy* is broadly written and focuses on a defendant's autonomy to choose the objective of his defense. Although Mr. McCoy's objective was to pursue a defense of innocence by presenting an alibi defense, Mr. Horn's objective was to assert a defense of innocence to the crime charged and the lesser-included offenses, i.e. asserting his innocence to any degree of murder. Mr. Horn was charged with first-degree murder. The only verdicts the jury was permitted to enter were "guilty," "guilty of second degree murder," "guilty of manslaughter," or "not guilty." *See* La. C.C.P. art. 814. The jury would not have been permitted to enter a plea relative to negligent homicide. The fact that defendant instructed his attorney to admit guilt to this different crime as part of his defense objective did not give defense counsel the authority to admit guilt to the crime charged or the lesser-included crimes, and does not cause us to disregard the holding of *McCoy*. While defense counsel may use his professional judgment to develop defense theories and trial strategies based on his assessment of the evidence, he cannot usurp the fundamental choices provided directly to a criminal defendant under the Constitution. As explained by the Court in *McCoy*, "these are not strategic choices about how best to achieve a client's objectives; they are choices about what the client's objectives in fact are." 138 S.Ct. at 1508.

Thus, based on the Supreme Court's ruling in *McCoy*, there is no question that a criminal defendant's decision whether to concede guilt implicates fundamental constitutional rights and the right to exercise that decision is protected under the Sixth Amendment. Moreover, a violation of this Sixth Amendment right is a

10

structural error and not subject to harmless error review. As the Court explained in

*McCoy*:

> Because a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence to McCoy's claim. To gain redress for attorney error, a defendant ordinarily must show prejudice. Here, however, the violation of McCoy's protected autonomy right was complete when the court allowed counsel to usurp control of an issue within McCoy's sole prerogative.
>
> Violation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called "structural;" when present, such an error is not subject to harmless-error review. Structural error affects the framework within which the trial proceeds, as distinguished from a lapse or flaw that is simply an error in the trial process itself. An error may be ranked structural, we have explained, if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest, such as the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty. An error might also count as structural when its effects are too hard to measure, as is true of the right to counsel of choice, or where the error will inevitably signal fundamental unfairness, as we have said of a judge's failure to tell the jury that it may not convict unless it finds the defendant's guilt beyond a reasonable doubt.
>
> Under at least the first two rationales, counsel's admission of a client's guilt over the client's express objection is error structural in kind. Such an admission blocks the defendant's right to make the fundamental choices about his own defense. And the effects of the admission would be immeasurable, because a jury would almost certainly be swayed by a lawyer's concession of his client's guilt. McCoy must therefore be accorded a new trial without any need first to show prejudice.

138 S.Ct. at 1510-11 (internal quotations and citations removed).[2] As in *McCoy*, we

find Mr. Horn's counsel explicitly conceded guilt over his client's objections, thus

violating Mr. Horn's Sixth Amendment rights. Given this violation, we have no

---

[2] In light of the Supreme Court's decision in *McCoy*, this court recently vacated Mr. McCoy's convictions and sentences, and remanded the matter to the district court for further proceedings consistent with *McCoy v. Louisiana*. *State v. McCoy*, 14-1449 (La. 8/31/18), -- So. 3d --.

choice but to vacate the conviction and sentence and remand this matter to the district court for a new trial.[3]

## CONCLUSION

Given the express holding of the Supreme Court in *McCoy*, we find defendant's assignment of error asserting a Sixth Amendment violation has merit. A criminal defendant's express refusal to concede guilt is safeguarded by core constitutional protections. While conceding guilt in the hope of avoiding a death sentence may be a reasonable strategic decision in some cases, the decision to do so belongs to the defendant. Defense counsel's decision to concede Mr. Horn was guilty of second-degree murder or manslaughter over Mr. Horn's objections resulted in a structural error requiring this court to vacate defendant's conviction and sentence.

## DECREE

DEFENDANT'S CONVICTION AND SENTENCE ARE VACATED; REMANDED TO THE DISTRICT COURT FOR A NEW TRIAL.

---

[3] Ordinarily we would first analyze the sufficiency of the evidence because lack of sufficient evidence to sustain the conviction would entitle a defendant to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed. 2d 30 (1981). *See State v. Maxie*, 93-2158 (La. 4/10/95), 653 So. 2d 526, 531. However, we find the particular structural error in this case—counsel's concession of guilt over defendant's objection—is inextricably intertwined with an analysis of the sufficiency of the evidence. Thus, it is impossible for us to scrutinize the fundamentally unfair trial in this case to determine if there is sufficient evidence to support the conviction.

# SUPREME COURT OF LOUISIANA

## NO. 2016-KA-0559

## STATE OF LOUISIANA

## VERSUS

## BRIAN DOUGLAS HORN

*FROM THE FORTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF DESOTO*

**WEIMER, J.**, additionally concurring.

While I agree with the majority's conclusion that, pursuant to **McCoy v. Louisiana**, ___ U.S. ___, 138 S.Ct. 1500 (2018), defendant's conviction and sentence must be reversed for violation of defendant's Sixth Amendment right to counsel, I write separately to address an issue that is pretermitted by the majority, but that nonetheless is highly relevant to defendant's trial on remand. That issue is the sufficiency of the evidence presented to prove every element of the crime of first degree murder beyond a reasonable doubt.

It is a necessary and fundamental first step in any analysis of a conviction in which sufficiency is assigned as error, to address the sufficiency argument directly and as an initial matter, because the lack of sufficient evidence to sustain the conviction would entitle the defendant to an acquittal under **Hudson v. Louisiana**, 450 U.S. 40 (1981). Indeed, for precisely that reason, it has been the long-standing practice of this court to address the sufficiency argument, even when the defendant's conviction and sentence must be reversed on other grounds. See, **State v. Crawford**, 14-2153, p. 19 (La. 11/16/16); **State v. Mickelson**, 12-2539, p. 5 (La. 9/3/14), 149 So.3d 178, 182; **State v. Maxie**, 93-2158 (La. 4/10/95), 653 So. 2d 526, 531. The sufficiency argument is especially relevant in this case because defendant's argument

that the State failed to prove that the killing occurred when the defendant was engaged in the perpetration or attempted perpetration of aggravated kidnapping or second degree kidnapping, if meritorious, would mean that, on remand, the crime could not be prosecuted as a first degree murder. Therefore, consistent with well-settled law and procedure, I offer the following analysis of defendant's arguments on appeal regarding the sufficiency of the State's evidence to convict him of the crime of first degree murder.

### Sufficiency of the Evidence (Assignments of Error #8-11)

In order to affirm a conviction, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational finder of fact to conclude that every element of the crime was proved beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 316 (1979); **Maxie**, 653 So.2d at 532. Importantly, the **Jackson** standard does not permit this court to substitute its own appreciation of the facts for that of the factfinder. **State v. Robertson**, 96-1048 (La. 10/4/96), 680 So. 2d 1165, 1166. It is not the province of the reviewing court to assess the credibility of witnesses or reweigh evidence. **State v. Smith**, 94-3116 (La. 10/16/95), 661 So. 2d 442, 443. As explained by this court in **State v. Mussall**, 523 So.2d 1305, 1310 (La. 1988):

> If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. [Footnote omitted.]

To obtain a conviction for first-degree murder under the State's theory of this case, the State had to prove beyond a reasonable doubt that defendant had a specific intent to kill or inflict great bodily harm on the victim while engaged in the

perpetration or attempted perpetration of aggravated kidnapping or second degree kidnapping. See La. R.S. 14:30(A)(1). Defendant argues the State failed to present sufficient evidence at trial that he had either specific intent to kill or was engaged in an aggravated kidnapping or second degree kidnapping at the time of the homicide.

Specific intent may be inferred when the circumstances indicate that the offender actively desired the prescribed criminal consequences of his act. La. R.S. 14:10(1). Because it is a state of mind, specific intent need not be proved as a fact, but may be inferred from the circumstances and the defendant's actions. **Mickelson**, 12-2539 at 6, 149 So.3d at 182-183; **State v. Broaden**, 99-2124, p.18 (La. 2/21/01), 780 So.2d 349, 362.

In this case, the State presented a forensic analysis of the cause of the victim's death, which was asphyxiation due to smothering. The coroner, Dr. James Traylor, testified for the State that the perpetrator had to obstruct the victim's mouth and apply pressure for 90 seconds in order to kill him. Dr. Traylor opined that death from smothering does not often happen accidentally and, ordinarily, does not happen to a healthy 12-year-old boy. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have determined that the defendant had the specific intent to kill or inflict great bodily harm on the victim.

**Aggravated Kidnapping**

Louisiana R.S. 14:44 provides:

Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:

(1) The forcible seizing and carrying of any person from one place to another; or

3

(2) The enticing or persuading of any person to go from one place to another; or

(3) The imprisoning or forcible secreting of any person.

Defendant argues that the State lacked sufficient evidence to convict him of aggravated kidnapping, noting that the offense requires the perpetrator to kidnap the victim with the intent to "force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control." Defendant argues there is a complete absence of evidence that he had any intent, or engaged in any communications or actions, to attain anything of value in return for the release of the victim. Defendant points to the State's argument that "no matter what happened to [the victim], whether a sexual act occurred or not, he was not going to live," which defendant contends undermines any possibility defendant intended to secure something for his victim's release. Defendant also points to the State's closing argument wherein it instructed the jury to ignore aggravated kidnapping as an aggravating circumstance in favor of second degree kidnapping.[1]

A review of the record reveals that the State did indeed fail to prove beyond a reasonable doubt that defendant committed aggravated kidnapping. In fact, in brief to this court, the State conceded "that there would not be sufficient evidence in the record to support a first degree murder charge with aggravated kidnapping." Thus, by the State's admission, this statutory aggravating circumstance was not proved. Nevertheless, "this Court has held on many occasions that the failure of one or more statutory aggravating circumstances does not invalidate others, properly found, unless

---

[1] The prosecutor argued: "Ladies and gentlemen, let me make this even easier for you when you do your punch list. Go to second degree kidnapping, remember, it's an either/or …. Save yourself some time, go to second degree kidnapping."

4

introduction of evidence in support of the invalid circumstance interjects an arbitrary factor into the proceedings." **State v. Manning**, 03-1982 (La. 10/19/04), 885 So. 2d 1044, 1102. There is no evidence to support a conclusion that the evidence offered in support of the aggravated kidnapping charge, which the State argued the jury need not even consider, injected an arbitrary factor into the proceedings. Therefore, it is necessary to examine whether another aggravating circumstance, specifically second degree kidnapping, was proved.

**Second Degree Kidnapping**

Louisiana R.S. 14:44.1 provides in relevant part:

A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:

. . . .

(3) Physically injured or sexually abused;

. . . .

B. For purposes of this Section, kidnapping is:

(1) The forcible seizing and carrying of any person from one place to another; or

(2) The enticing or persuading of any person to go from one place to another; or

(3) The imprisoning or forcible secreting of any person.

. . . .

Relevant to the facts of this case, to establish the offense of second degree kidnapping, the State had to prove defendant enticed or persuaded the victim to go from one place to another and that the victim was physically injured or sexually abused.

5

The record clearly supports, and defendant does not contest, a finding that defendant "enticed or persuaded" the victim "to go from one place to another." Text messages between defendant and the victim establish defendant disguised his identity and lured the victim from his friend's house and into defendant's taxi by pretending to be a young girl who wanted a sexual encounter. Thus, the only issue to be resolved is whether the State proved the victim was sexually abused or physically injured.

Defendant argues that no rational trier of fact could have found beyond a reasonable doubt that he sexually abused the victim. Although there was some suggestion of sexual abuse by the State at trial, the State essentially abandoned the sexual abuse theory in closing arguments.[2] Additionally, the State does not argue in brief to this court that the victim was sexually abused. Rather, the State asserts the evidence was sufficient to prove the victim was "injured" during the kidnapping and, thus, the evidence was sufficient to establish second degree kidnapping.

The defendant argues that the State presented insufficient evidence that the victim suffered injuries apart from those that resulted from the murder. However, a review of the record, viewed in the light most favorable to the prosecution, reveals that the State met its burden of demonstrating that defendant physically injured the victim in the course of kidnapping him prior to his death. The coroner, Dr. Traylor, testified that the victim died from being smothered and opined that the perpetrator smothered the victim while on his back. Dr. Traylor identified several areas of "petechiae" or ruptured blood vessels in the victim's eyes and on his face and forehead, which would have required the perpetrator to apply pressure to some part

_____

[2] The prosecutor argued: "All this back and forth in the trial about DNA . . . whether he was sexually abused or not, that's great and all, but you can stop right there. Physically injured, no doubt, without a doubt that he is physically injured as a result of Brian Horn enticing him or persuading or any person to go from one place to another."

6

of the body to prevent the drainage of blood to the heart. Dr. Traylor identified an abraded contusion on the inside of the victim's mouth consistent with the perpetrator compressing his lips and mouth against his braces. Dr. Traylor also described numerous abrasions on the victim's body and testified they were anti-mortem wounds. Defendant argued these abrasions were consistent with the victim's body being dragged from the road and over a barbed wire fence to the area where the body was found. However, Dr. Traylor testified the wounds were not consistent in size with barbed wire and were not consistent with the perpetrator dragging the victim's body in one direction post-mortem.

In summary, the State presented photos and testimony from Dr. Traylor that (1) the victim exhibited injuries on his neck, face, hands, back shoulder, and torso; (2) the injuries occurred before death; and (3) the injuries were not solely attributable to smothering. When viewed in the light most favorable to the State, the evidence is sufficient for a rational trier to find beyond a reasonable doubt that some of the injuries on the victim's body resulted apart from the killing itself or its immediate aftermath.

Evaluating the evidence in the light most favorable to the prosecution, giving deference to the jury's obvious assessment of credibility and weighing of the evidence, and without substituting my own appreciation of the facts for that of the jury, it is apparent that the evidence was sufficient for the jury to find defendant committed second degree kidnapping. Given that the evidence was sufficient for the jury to find proof of guilt beyond a reasonable doubt under **Jackson**, defendant's assignments of error asserting insufficiency of evidence are without merit.

# SUPREME COURT OF LOUISIANA

## NO.  2016-KA-0559

## STATE OF LOUISIANA

## VERSUS

## BRIAN DOUGLAS HORN

*FROM THE FORTY-SECOND JUDICIAL DISTRICT COURT*
*FOR THE PARISH OF DESOTO*

**GUIDRY, J.**, additionally concurs for the reasons assigned by Justice Weimer.