23CA1076 Peo v Astacio 01-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1076
El Paso County District Court No. 22CR3066
Honorable Laura N. Findorff, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joenny Manuel Astacio,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 30, 2025

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Joseph T. Goodner, Alternate Defense Counsel, Englewood, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Joenny Manuel Astacio, appeals the judgment of conviction entered on jury verdicts finding him guilty of reckless child abuse resulting in death and two counts of drug possession (fentanyl and cocaine).  He contends that the trial court reversibly erred by (1) allowing his counsel to concede his guilt on a lesser child abuse charge and on the drug possession charges, despite his wish to maintain his innocence; and (2) denying his motion to sever his charges from those of his codefendant.  As to the child abuse conviction, we agree with Astacio's first contention and, therefore, reverse and remand for a new trial without considering the second contention.  As to the two drug possession convictions, we disagree with both of Astacio's contentions and, therefore, affirm.

## I.     Background

¶ 2     One morning, Astacio discovered his fifteen-month-old son "lifeless" in bed next to the codefendant, who was Astacio's partner and the child's mother.  Astacio said he'd been downstairs with a friend all night talking, playing video games, and doing fentanyl.  His codefendant had been in an upstairs bedroom with their son all night, but Astacio said he'd gone up to check on them every twenty minutes or so.  Both defendants would ultimately test positive for

fentanyl and other substances, and drugs and drug paraphernalia would be found in the house, including in the bedroom where the child was that night.

¶ 3 Astacio's codefendant called 911 and the child was taken to the hospital, where he was eventually pronounced dead. It was later determined that the child died of a fentanyl overdose, though it wasn't clear how he'd accessed fentanyl. According to Astacio, the couple had an agreement that neither of them would use fentanyl in the same room as their child.

¶ 4 Astacio and his codefendant were both charged with reckless child abuse resulting in death, as well as multiple counts of drug possession.[1] The trial court joined their cases for trial over the defendants' objection and denied the defendants' motion to sever. After the initial trial resulted in a mistrial, a second trial resulted in identical convictions for Astacio and his codefendant.

---

[1] In addition to the two drug possession charges for which Astacio was convicted, he was also charged with — but was acquitted of — unlawful possession of heroin.

## II.    Right to Autonomy

¶ 5    Astacio contends that the trial court violated his Sixth Amendment right to autonomy by allowing his counsel, over his objection, to concede his guilt to the lesser included charge of negligent child abuse resulting in death and to the drug possession charges. We agree as to the child abuse charge but not as to the drug possession charges.

### A.    Additional Facts

¶ 6    Before the start of the retrial, defense counsel alerted the trial court to a potential conflict with Astacio. At a hearing held under *People v. Bergerud*, 223 P.3d 686 (Colo. 2010), counsel stated,

> [T]here is a conflict between the defense counsel and Mr. Astacio on how to present his defense. The jury instructions that we have gotten from the District Attorneys have the lesser included charge of child abuse resulting in death - criminal negligence. As Your Honor was aware, the last time we were in the trial that was more or less the theme that the jury should abide by the lesser included charge of that. *Mr. Astacio is objecting to us conceding that in any type of opening or implying that in any type of opening, and wishes to run a complete "he did nothing wrong" defense.*
>
> I think it would be ineffective — in my opinion, it would be ineffective of me, based upon the facts, to do that. I've informed him that he has

certain decisions that he can make as far as testifying, not testifying, but that opening statements, closing statements are the determination of myself and [co-counsel]. And Mr. Astacio is objecting to that and bringing that to the Court's attention.

(Emphasis added.)

¶ 7 When asked if there was anything he wanted to add or if his counsel had encapsulated his objection, Astacio said, "My thing is this: He's telling me that I had knowledge of what was going on. I'm telling him, no, I did not have knowledge. And that's what I'm standing at with it, and he's trying to tell me — yes."

¶ 8 The trial court found that there wasn't a conflict between Astacio and his counsel. The court also concluded that defense counsel's decision to concede guilt on the lesser offense was part of the trial strategy that was within counsel's purview.

¶ 9 During the trial, defense counsel conceded that Astacio bore some responsibility for what had happened to his son. Instead of maintaining Astacio's complete innocence, as Astacio wanted, counsel defended the child abuse charge on the basis that Astacio acted with mere negligence (which would've made him guilty of the lesser offense of negligent child abuse resulting in death) and not

4

with recklessness (which would've made him guilty of the charged offense of reckless child abuse resulting in death).

¶ 10     For instance, in opening statements, defense counsel stated,

> [R]ecklessly means they have to show that [the defendants] saw it, they knew it, and they were aware of it and they said, I just don't give a rat's ass.  Negligence means because of their addiction, they failed to realize how dangerous this situation was for their child.  If they're guilty of anything, they're guilty of negligence.
>
> Everybody wants to hold somebody accountable when we have a dead child, and I understand that and I see that, but hold them accountable for what the law says they should be held accountable for and nothing more.

¶ 11     Then, in closing argument, defense counsel maintained, "We're not here denying anything."  Instead, counsel reiterated that "[the prosecution is] gonna say reckless, we're arguing negligence."  Counsel expressly admitted that Astacio "was negligent" and was "guilty" of "negligence."  And counsel closed by asking the jury to "make the right" decision: "Make the one that Mr. Astacio is guilty of, and that's negligent child abuse resulting in the death of his son.  He's not guilty of the reckless form."  Counsel also conceded Astacio's guilt on the drug possession charges.

## B. Standard of Review and Applicable Law

¶ 12 The Sixth Amendment guarantees a criminal defendant the right to counsel to assist in their defense. U.S. Const. amend. VI. When a defendant is represented by counsel, that counsel has the right to make certain decisions involving strategy and trial management, such as deciding "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)). But other decisions are so fundamental that they are solely the defendant's to make, like "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, . . . forgo an appeal, . . . [and] decide that the objective of the defense is to assert innocence." *Id.* Such decisions "are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." *Id.* Interference with a defendant's right to make these choices — for instance, by "allow[ing] defense counsel to concede guilt over the defendant's intransigent and unambiguous objection" — violates the

defendant's right to autonomy secured by the Sixth Amendment. *Id.* at 420; *see also id.* at 422-24, 427.

¶ 13 We review de novo an alleged violation of a defendant's constitutional rights. *People v. Cuevas*, 2024 COA 84, ¶ 21.

¶ 14 "[C]ounsel's admission of a client's guilt over the client's express objection is error structural in kind." *McCoy*, 584 U.S. at 427. "[S]tructural errors . . . require automatic reversal without individualized analysis of how the error impairs the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶ 10; *see also McCoy*, 584 U.S. at 427-28 (violation of the defendant's right to autonomy was structural error and, thus, required a new trial without any need for the defendant to establish prejudice).

## C. Child Abuse Charge

¶ 15 This case is strikingly similar to *McCoy* and, therefore, leads to the same result. Like the defendant in that case, Astacio developed a conflict with his counsel over his desire to maintain a defense of innocence. *See McCoy*, 584 U.S. at 418-19. And, as in that case, the trial court here dismissed Astacio's concerns and ruled that his counsel could concede his guilt, which his counsel went on to do. *See id.* at 419-20. Just as that action violated the defendant's Sixth

7

Amendment right to autonomy in *McCoy*, *id.* at 422-24, so, too, defense counsel's concession of Astacio's guilt on the child abuse charge over his objection violated his right to autonomy.

¶ 16    We reject the People's arguments to the contrary. First, we reject the People's argument that Astacio's objection was neither intransigent nor unambiguous. Particularly through his counsel's description of the conflict, Astacio made it clear that he wished to maintain his complete innocence on the child abuse charge, without admitting either reckless or negligent child abuse. *See id.* at 419 (the defendant raised the issue of his right to autonomy when his counsel told the trial court about their disagreement over conceding guilt and he told the court he didn't agree with his counsel's concession of guilt); *cf. Cuevas*, ¶ 34 (discerning no violation of the right to autonomy where "nothing in the record indicates that [the defendant] expressly objected to counsel's concession" of guilt). And once the trial court rejected the claimed conflict and ruled that defense counsel had the prerogative to concede Astacio's guilt on the lesser offense, Astacio didn't need to reraise the issue later in the proceedings, request a new attorney, or

do anything else to maintain his objection. *See generally* Crim. P. 51; *Bondsteel v. People*, 2019 CO 26, ¶ 28.

¶ 17    We also reject the People's argument that a complete innocence defense wasn't viable in this case. Regardless of how weak defense counsel may have believed such a defense would be, asserting that defense was Astacio's choice to make. *See McCoy*, 584 U.S. at 422, 424 (even if defense counsel "reasonably assess[ed] a concession of guilt as best suited to avoiding the death penalty," "it was not open to [defense counsel] to override [the defendant's] objection" to that concession); *Turner v. State*, 570 S.W.3d 250, 276-77 (Tex. Crim. App. 2018) (defense counsel violated the defendant's right to autonomy by conceding his guilt over his objection, even though "they believed they were ethically obligated to act contrary to his wishes in order to best serve his interests").

¶ 18    Finally, we reject the People's argument that Astacio's right to autonomy wasn't violated because defense counsel conceded guilt on a lesser offense instead of the greater, charged offense.[2] The

---

[2] Relatedly, the People argue that defense counsel "only conceded the lesser included element of negligence." To the extent that the People suggest defense counsel conceded only one of the elements

9

*McCoy* case itself involved greater and lesser offenses, as defense counsel conceded the defendant's guilt of second degree murder in an attempt to avoid the death penalty in a first degree capital murder case; and in that context, the Supreme Court held that the concession, over the defendant's objection, violated the defendant's right to autonomy. 584 U.S. at 418 n.1, 422-24. Following *McCoy*, other courts have held that the right to autonomy is violated when defense counsel concedes a lesser offense despite the defendant's desire to maintain innocence. *See, e.g.*, *People v. Bloom*, 508 P.3d 737, 760-61 (Cal. 2022) ("*McCoy* makes clear that the decision whether to concede the defendant should be found guilty of a crime — even a lesser crime than the one the prosecution charged — is a decision that necessarily belongs to the defendant."); *see also Turner*, 570 S.W.3d at 275-77; *State v. Horn*, 2016-0559, pp. 9-11 (La. 9/7/18), 251 So. 3d 1069, 1075-76.

---

of the charged crime, we disagree. Defense counsel clearly conceded all the elements of the lesser offense of negligent child abuse resulting in death.

¶ 19 Accordingly, we conclude that the trial court erred when it allowed defense counsel to concede Astacio's guilt to negligent child abuse resulting in death over Astacio's objection.

¶ 20 This error is structural in nature and requires reversal. *See McCoy*, 584 U.S. at 427-28; *Hagos*, ¶ 10; *Bloom*, 508 P.3d at 762-63. We therefore reverse Astacio's conviction for reckless child abuse resulting in death and remand for a new trial on that charge.

### D. Drug Possession Charges

¶ 21 With respect to the drug possession charges, however, "nothing in the record indicates that [Astacio] expressly objected to counsel's concession" of guilt. *Cuevas*, ¶ 34. Indeed, there was ample evidence of Astacio's possession of fentanyl and cocaine; the colloquy with the court concerning his conflict with defense counsel centered solely on the child abuse charge; and Astacio hasn't pointed to any place in the record (nor have we found any) where he expressed any objection to his counsel's concession of guilt on the drug possession charges.

¶ 22 Accordingly, we conclude that Astacio's right to autonomy was not violated with respect to the two drug possession charges on which he was convicted. *See id.* at ¶¶ 22-34; *see also Florida v.*

11

*Nixon,* 543 U.S. 175, 192 (2004) (finding no constitutional violation where the defendant neither approved nor protested his counsel's strategy to concede guilt).

### III.   Denial of Motion to Sever

¶ 23    Astacio also contends that the trial court erred by denying his motion to sever his charges from those of his codefendant.  Because we are reversing the conviction for reckless child abuse resulting in death, we consider this issue only as it relates to the remaining drug possession convictions.  And as to those convictions, we perceive no reversible error.

### A.   Standard of Review and Applicable Law

¶ 24    Charges against two or more defendants may be filed or joined together if the defendants are alleged to have participated in the same act or series of acts arising from the same criminal episode.  Crim. P. 8(b), 13.  Thereafter, a defendant has a right to have their charges severed from those of a codefendant if the court finds that the prosecution will probably present prejudicial evidence (other than reputation or character testimony) that wouldn't be admissible if the defendants were tried separately.  § 16-7-101, C.R.S. 2024; Crim. P. 14.

¶ 25    But where a defendant isn't entitled to severance as a matter of right, the trial court has discretion to decide whether to grant a motion to sever. *People v. Black*, 2022 COA 127, ¶ 60. We won't disturb such a decision "absent a showing of abuse of discretion and actual prejudice." *Id.* (quoting *People v. Johnson*, 30 P.3d 718, 725 (Colo. App. 2000)). In considering whether actual prejudice resulted from a trial court's denial of a motion to sever, we consider (1) "whether the number of defendants or the complexity of evidence is such that the jury will confuse the evidence and the law applicable to each defendant"; (2) "whether, despite admonitory instructions, evidence admissible against one defendant will improperly be considered against another"; and (3) "whether the defenses are antagonistic." *Id.* (quoting *Johnson*, 30 P.3d at 725-26).[3]

## B.    Application

¶ 26    Astacio doesn't develop any argument that he was entitled to severance as a matter of right with respect to the drug possession charges. Nor do we perceive any possibility that he could show the

---

[3] We reject Astacio's assertion that a constitutional harmless error standard applies. *See Washington v. People*, 2024 CO 26, ¶ 21 n.4.

prejudicial impact of any evidence admissible only as a result of the joinder, as would be required to establish his entitlement to severance as a matter of right on the drug possession charges. *See* § 16-7-101; Crim. P. 14. And we needn't determine whether the trial court erred by denying his motion to sever as a matter of discretion because we conclude that no actual prejudice resulted relating to the drug possession charges.

¶ 27 Although Astacio appears to raise this challenge with respect to all of his charges, his arguments focus almost entirely on the child abuse charge. For instance, in his argument regarding prejudice, he asserts that he was prejudiced by the joinder because (1) he had two opponents, insofar as the prosecution and his codefendant both emphasized the evidence against him and sought to undermine his narrative on the child abuse charge; (2) his defense of the child abuse charge was diluted; (3) he lost persuasive evidence relating to the child abuse charge; (4) he faced delay and disruptions in the trial date to accommodate the codefendant; and (5) he was hindered in jury selection by having to share eight peremptory challenges with his codefendant rather than having his own five challenges. He doesn't articulate any prejudice relating

specifically to the drug possession charges, and we don't perceive any. And his generic arguments regarding trial delays and shared peremptory challenges don't establish the requisite prejudice.

¶ 28    Indeed, the evidence relating to the drug possession charges was overwhelming and nearly identical for Astacio and his codefendant. Both defendants tested positive for fentanyl and cocaine. Astacio also admitted to investigators that he'd done fentanyl during the night before finding his son nonresponsive. And investigators recovered fentanyl, cocaine, and drug paraphernalia in the home where the defendants were staying.

¶ 29    Accordingly, we perceive no actual prejudice resulting from the denial of Astacio's motion to sever as it relates to his convictions for drug possession.

## IV.    Disposition

¶ 30    Astacio's conviction for reckless child abuse resulting in death is reversed, and the case is remanded for a new trial on that charge. The judgment is otherwise affirmed.

JUDGE FOX and JUDGE LUM concur.

15