# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-523

**STATE OF LOUISIANA**

**VERSUS**

**RALPH JOHNSON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2014-1638
HONORABLE E. DAVID DESHOTELS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.

**AFFIRMED.**

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 82389**
**Lafayette, Louisiana 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Ralph Johnson**

**Herbert Todd Nesom**
**District Attorney**
**Joe Green**
**Assistant District Attorney**
**33rd Judicial District Court**
**Post Office Box 839**
**Oberlin, Louisiana  70655**
**(337) 639-2641**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Ralph Johnson**
**116029, Walnut -1**
**Louisiana State Prison**
**Angola, Louisiana  70712**
**DEFENDANT/APPELLANT IN PROPER PERSON:**
    **Ralph Johnson**

**CONERY, Judge.**

On May 28, 2014, Defendant Ralph Johnson was charged by grand jury indictment with one count of second degree murder in violation of La.R.S. 14:30.1, and one count of obstruction of justice in violation of La.R.S. 14:30.1(B)(1). Defendant pled not guilty and not guilty by reason of insanity to both charges. After the appointment of a sanity commission and consideration of its report, the trial court found Defendant competent to stand trial. The issue of sanity at the time of the offense was reserved for trial. Defendant also raised the affirmative defense of voluntary intoxication under La.R.S. 14:15(2). The jury found Defendant guilty of second degree murder, and not guilty of obstruction of justice. The trial court heard and denied Defendant's motion for new trial and motion for post-verdict judgment of acquittal. At the sentencing hearing held on March 27, 2018, Defendant received the mandatory sentence of life imprisonment at hard labor to be served without the benefit of probation, parole or suspension of sentence. Defendant now appeals his conviction and sentence. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 7, 2014, police were dispatched to the Bowman Hicks apartments, in response to a call that a black male was running around with a knife chasing people and stabbing someone. Upon arrival, Officer Froehlich and Officer Frank were pointed in the direction of Unit 56, the apartment of Ralph Johnson, who witnesses identified as the person who committed the stabbing. The officers arrested Ralph Johnson for aggravated battery for stabbing Michael Kirklin. When officers were later informed the victim had died, Ralph Johnson was charged with second degree murder.

Nadia Whiting testified that, the night before the incident, she and Defendant smoked PCP at her apartment, but noted that Defendant was not acting erratically. However, according to Ms. Whiting, the next day, Defendant returned to her apartment and was talking to "Leroy[1] about he wanted to cook some crack, but he had some cocaine, but he didn't have enough cocaine. And Leroy wasn't gonna do it and he was mad." When Defendant's request was denied, he became angry and left.[2] Ms. Whiting testified that when Defendant returned to her apartment, he was very angry and threatening to kill everyone who was at her apartment. He then attempted to cut into the screen on Ms. Whiting's front door with a knife, at which point she called the police and he left.

Other residents of Bowman Hicks apartments testified that Defendant then began threatening a group of teenage boys, who Defendant believed were mocking him. Eye-witness accounts and video evidence show that when Michael Kirklin, the victim, told Defendant to "chill out" Defendant then began to chase him, wielding his knife and threatening him. The victim ran into the home of Laura Kirklin, his grandmother, and Defendant followed him. Laura Kirklin testified through perpetuated video testimony obtained prior to trial[3] that Defendant attacked her and held a knife to her stomach. According to the testimony of Cletoria Kirklin, the victim's younger cousin, the victim rushed out of the apartment and punched Defendant in an attempt to stop Defendant from attacking his grandmother. Cletoria Kirklin further testified that the victim threw a chair at

---

[1] "Leroy" is identified as "Leroy Hobson" in the Defendant's post-arrest video interview.

[2] There are conflicting reports throughout the record as to what set off Defendant's anger. In his post-arrest interview, Defendant claims that that he was looking for Leroy to get his money back after the latter sold him some bad drugs. Further, the video taken by Terrance "T.J." Merritt supports Defendant's contention that he was trying to get his money back.

[3] Laura Kirklin's deposition was taken for use at trial as she had terminal cancer. She died just before trial.

Defendant, who then began chasing the victim, at which point the victim slipped and fell. Defendant got on top of the victim and immediately began stabbing him. According to Cletoria Kirklin's testimony, Defendant stabbed the victim five or six times. Lauranna Kirklin, another cousin of the victim, also testified that Defendant stabbed the victim multiple times, then he stood up and ran to his house, dropping the knife as he ran.

The State called a total of ten witnesses who presented eye-witness accounts of the events on April 7, 2014. The State also submitted into evidence a cellphone video taken by Jahiem Kirklin, a cousin of the victim, which depicted the actions of Defendant prior to the murder. Another cellphone video was submitted into evidence by the State from Terrance "T.J." Merritt, a friend of the victim, which clearly showed Defendant stabbing the victim.

The State also presented a video of Defendant's post-arrest interview statement to Detective West on April 7, 2014. Defendant's account of events prior to the stabbing matches most of the eye-witness testimony. According to the video interview, Defendant stated that he had a knife because he was going after Leroy to get his money back because Leroy sold him baking soda instead of crack. Defendant also stated that when he was headed to Leroy's apartment, a group of teenage boys started to tease him, then the victim hit him with a chair. Defendant stated that "Mike got in the way"[4] but claims that he does not remember what happened. Later in the interview, when questioned about the knife, Defendant was not able to recall whether he had a knife. According to Defendant's statements in the video interview, he did not remember anything about stabbing the victim,

---

[4] The victim's name was Michael Kirklin and is the "Mike" referenced in Defendant's statement.

stating that he only remembered getting hit with a chair and then going to jail, but nothing in between those two events.

*Sanity Commission Proceedings*

On June 11, 2014, Defendant entered pleas of not guilty and not guilty by reason of insanity. The trial court appointed a sanity commission composed of Dr. James Anderson and Dr. Garrett Ryder, who issued reports finding Defendant competent to stand trial. On May 1, 2015, the trial court issued an amended order directing Dr. Ryder and Dr. Anderson to supplement their initial evaluations with their findings as to Defendant's state of mind at the time of the offense. At the hearing on the motion to determine mental capacity, the doctors found that Defendant had the mental capacity and competency to proceed to trial and that he was sane at the time of the offense, and they so testified at trial.

*Trial and Post-Trial Proceedings*

At trial, the State presented the testimony of multiple eye-witnesses, the officers who came into contact with Defendant on the date of his arrest, and the doctors appointed to the sanity commission. The defense presented testimony of a detective, a deputy, and Mr. Carlos Robinson. The State recalled Dr. Anderson as a rebuttal witness.

The jury returned a verdict of guilty of second degree murder and not guilty on the charge of obstruction of justice. The trial judge ordered a pre-sentence investigation (PSI) and set sentencing for March 27, 2018. On November 30, 2017, Defendant filed a motion and order for new trial and/or motion for post-verdict judgment granting acquittal. At a hearing on January 11, 2018, the trial court denied Defendant's motions. At the March 27, 2018 sentencing hearing, the trial court considered the PSI, which indicated that Defendant was a fourth felony offender. In accordance with La.R.S. 14:30.1, second degree murder, the trial

4

court sentenced Defendant to the mandatory sentence of life imprisonment at hard labor to be served without the benefit of probation, parole or suspension of sentence.

Defendant now timely appeals his conviction and sentence asserting two assignments of error through counsel and two assignments of error through a pro se brief filed by Defendant.

## ASSIGNMENTS OF ERROR

Defendant submits the following counselled assignments of error:

1. The evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 433 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, was insufficient to prove beyond a reasonable doubt the elements of second degree murder. Ralph Johnson was under extreme mental and emotional disturbance at the time of this offense, which is of such severe nature that it is not possible to treat this offense as a second degree murder.

2. The trial court erred in denying defense challenge for cause of juror no. 23[,] Penny Bergeron[;] juror no. 206, Richard Nichols[;] and juror no. 112 Alexis Hamilton.

Defendant submits the following pro se assignments of error:

1. Johnson's trial counsel violated client autonomy when he conceded guilt to specific intent murder during his closing argument to the jury.

2. The State exercised a peremptory challenge against an African-American juror in violation of Article I, § § 1, 2, 13, 16, 17 and 22 of the Louisiana Constitution of 1974 and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

## LAW AND DISCUSSION

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

5

*Assignment of Error One: Sufficiency of the Evidence*

Defendant asserts that the State failed to provide sufficient evidence to convict him of second degree murder. Specifically, Defendant argues that the State failed to prove beyond a reasonable doubt that he had the specific intent to kill due to his defenses that he was either insane at the time of the offense or that he was so intoxicated that he could not form specific intent. Alternatively, Defendant argues he was provoked such that a responsive verdict of manslaughter should be applicable, not second degree murder. Therefore, Defendant's conviction and sentence should be reversed.

The analysis for a sufficiency of the evidence claim is well-settled:

The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *State v. Captville*, 448 So.2d 676 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165, and *State v. Lubrano*, 563 So.2d 847 (La.1990)). The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at 1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726–27). Our supreme court has stated:

However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988). In determining

6

the sufficiency of the evidence supporting a conviction, an appellate court must preserve "'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence ... in the light most favorable to the prosecution.'" *McDaniel v. Brown*, 558 U.S. 120, 134, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 [(2010)] (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

*State v. Cofer*, 16-871 pp. 3-4 (La.App. 3 Cir. 4/5/17), 216 So.3d 313, 316–17, *writ denied*, 17-1150 (La. 5/11/18), 241 So.3d 1014.

Louisiana Revised Statutes 14:30.1(A)(1) provides that, "Second degree murder is the killing of a human being[,] [w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" Specific intent is that state of mind that "exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1).

Defendant pled not guilty and not guilty by reason of insanity. Defendant also argued the affirmative defense of intoxication to the jury, just as he does to this court. Because neither of these defenses involved a claim that Defendant was not the one who stabbed the victim, defense counsel also argues an alternative defense that Defendant was provoked and, further, was not in full possession of his faculties due to ingesting "bad drugs." He claims that the responsive verdict of manslaughter should have been entered instead.

There is no question that Defendant inflicted the stab wounds which resulted in the death of Michael Kirklin on April 7, 2014. In fact, a cellphone video introduced into evidence by the State and taken from Terrance "T.J." Merritt's phone shows Defendant stabbing the victim. Therefore, on review, we must

7

determine whether there was sufficient evidence to show that any of Defendant's asserted defenses negate the specific intent required to prove beyond a reasonable doubt a conviction for second degree murder.

### *Affirmative Defense 1: Insanity*

The supreme court set out the standard for reviewing insanity on a sufficiency claim in *State v. Silman*, 95-154, p. 7 (La. 11/27/95), 663 So.2d 27, 32 (citations omitted):

> In Louisiana, a legal presumption exists that a defendant is sane at the time of the offenses. To rebut the presumption of sanity and avoid criminal responsibility, defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. Criminal responsibility is not negated by the mere existence of a mental disease or defect. To be exempted of criminal responsibility, defendant must show he suffered a mental disease or mental defect which prevented him from distinguishing between right and wrong with reference to the conduct in question. The determination of sanity is a factual matter. All the evidence, including expert and lay testimony, along with the defendant's conduct and action, should be reserved for the fact finder to establish whether the defendant has proven by a preponderance of the evidence that he was insane at the time of the offense. Lay testimony pertaining to defendant's actions, both before and after the crime, may provide the fact finder with a rational basis for rejecting unanimous medical opinion that the defendant was legally insane at the time of the offense.

> In reviewing a claim for insufficiency of evidence in an action where an affirmative defense of insanity is raised, this court, applying the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), must determine whether under the facts and circumstances of the case, any rational fact finder, viewing the evidence most favorable to the prosecution, could conclude, beyond a reasonable doubt, that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense.

Following Defendant's plea of not guilty and not guilty by reason of insanity, the trial court appointed a sanity commission to determine if Defendant was competent to stand trial and whether Defendant was insane at the time of the offense. The jury heard from Dr. Ryder and Dr. Anderson, both of whom were

accepted as experts in the field of forensic psychiatry. Both testified that Defendant was competent to stand trial. Both testified that they did not find Defendant to have any mental disease that would affect his ability to distinguish right from wrong at the time of the offense. Specifically, Dr. Ryder testified that Defendant's behavior at the time of the offense showed linear, goal-oriented thinking, consistent with a person who knew right from wrong and who was able to control his actions.

Defendant argued that he was suffering from a concussion at the time of the offense, claiming that the victim hit him in the head with a chair before Defendant began stabbing him. According to the testimony of the State's witnesses, there are varying reports as to whether Defendant was hit with a chair, who may have hit Defendant with a chair and where, and at what point during these events Defendant was hit with a chair, if at all.

More to the point, the testimony of the interviewing detective, Detective West, stated that Defendant did not complain of any head injuries during booking, nor did he see any physical signs of injury on Defendant. Furthermore, Dr. Anderson, expert forensic psychiatrist, testified that nothing in Defendant's behavior in his interview video would indicate to him that Defendant suffered a concussion. Given the expert testimony that Defendant was not insane at the time of the stabbing and the inability of Defendant to prove he was concussed from being hit with a chair before he started stabbing the victim, there is sufficient evidence for the jury to have found that Defendant had the requisite specific intent at the time of the offense. Accordingly, Defendant's insanity argument lacks merit.

*Affirmative Defense 2: Intoxication*

Defendant contends in brief that his actions on April 7, 2014, were the result of an involuntary bad reaction to voluntarily ingested substances. Louisiana Revised Statutes 14:15(2) lays out the voluntary intoxication defense:

> The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
>
> . . . .
>
> (2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.

The supreme court in *State v. Mickelson*, 12-2539, pp. 6-7 (La. 9/3/14), 149 So.3d 178, 183 (footnote omitted) (citations omitted), sets out the standard for proving an intoxication defense:

> Voluntary intoxication will not excuse a crime, but it is a defense to a specific intent offense if the circumstances demonstrate that intoxication precluded formation of the requisite intent. The defendant has the burden of proving his intoxication defense; thereafter, it falls to the state to negate that defense by showing beyond a reasonable doubt that specific intent was present despite the defendant's alleged intoxication. Whether voluntary intoxication in a particular case is sufficient to preclude specific intent is a question to be resolved by the trier of fact.

"Because it is a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances and the defendant's actions. Specific intent may be formed in an instant." *Id*. at 182. "[W]here the jury has heard all the evidence and received the proper instructions from the trial judge regarding an intoxication defense, its verdict should not be impinged upon absent an abuse of the jury's discretion." *State v. Smith*, 95-1171, p. 4 (La.App. 3 Cir. 4/24/96), 677 So.2d 458, 461 (citations omitted).

10

While Nadia Whiting testified Defendant did PCP with her the previous night, there is no witness testimony corroborating Defendant's claim in his post-arrest video interview that he had done drugs on the day of the incident. Some of the State's witnesses did testify that Defendant was a known drug user, and they believed Defendant to be high on the day of the incident. His demeanor on that day was abnormal, and he was acting differently than he usually does when high on drugs. Detective West testified that he believed Defendant was intoxicated, but he did not find his behavior indicated any sort of mental disturbance. Furthermore, Dr. Anderson noted that when Defendant's blood was tested on April 13, 2014, six days after his arrest, it was positive for cocaine metabolites and PCP.

However, the fact that Defendant was high is not sufficient to negate specific intent. Defendant's intoxication must be so severe that it precluded an ability to form specific intent in order for his intoxication to be an affirmative defense. La.R.S. 14:15(2); *See Mickelson*, 149 So.3d 178. Both Dr. Anderson and Dr. Ryder testified that the cellphone videos of the events of April 7, 2014, depicted Defendant's actions to be the result of logical, calculated thinking. In particular, both experts testified that Defendant's decision to leave Ms. Whiting's home and get a knife from his own apartment to cut through her screen door and force his way inside showed intentional thought. Defendant then began chasing the victim with the knife, screaming, "come get it," clearly evidencing an intent to kill the victim. When the victim went inside his grandmother's house, Defendant began attacking the victim's grandmother, who was on the porch. The victim then came out of the house and intervened in an effort to protect his grandmother. When the victim accidentally fell, the defendant then immediately pounced on the victim, stabbing him several times, resulting in the victim's death.

Based on our independent review of all of the evidence, we find that it was reasonable for the jury to have concluded that Defendant did not prove by a preponderance of the evidence that intoxication precluded him from forming the specific intent to kill the victim. We find no abuse of the jury's discretion in its verdict of guilty of second degree murder.

### *Alternative Defense: Responsive Verdict of Manslaughter*

Lastly, in his counselled brief, Defendant argues that if neither affirmative defense is applicable, then Defendant should be found guilty of no more than the responsive verdict of manslaughter. In this regard, La.R.S. 14:31(A)(1) provides that manslaughter is "[a] homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection."

Defendant asserts that he was provoked when he was being mocked by a group of boys, including the victim. Defendant also asserts that he was provoked when he was hit in the head with a chair by the victim. At closing arguments, defense counsel argued that before being "hit with a chair," Defendant and the victim were only using their fists, and that it was being hit with the chair that sent Defendant into a rage that was sufficient to deprive an average person of cool reflection. Arguments of counsel are not evidence, and the jury was able to see the video and hear all the evidence.

"In reviewing defendant's claim, this court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence." *State v. Lombard,* 486 So.2d 106, 111 (La.1986) (citations omitted).

Defendant has provided no support for his contention that "being ridiculed" would be a sufficient provocation "to deprive an average person of his self-control and cool reflection" such that a second degree murder should be considered manslaughter. Furthermore, Defendant's alternative claim that he was provoked when the victim hit him in the head with a chair is likewise without support based on our review of all the evidence. Although someone randomly coming up to Defendant and hitting him in the head with a chair might be sufficient provocation to attack that person in self-defense, that is not what the witness testimony was in this case. Nearly every eye-witness, regardless of whether they saw the victim hit Defendant with a chair, agreed that Defendant had been chasing teenagers around with a knife, threatening to kill someone prior to his confrontation with the victim. He specifically threatened to kill the victim and chased the victim to his grandmother's home. Furthermore, the videos from Jahiem Kirklin and "T.J." Merritt clearly show Defendant waving a knife around in a threatening manner, with Jahiem's video showing Defendant chasing after the victim at his grandmother Laura Kirklin's apartment telling him to "come get it."

Finally, Defendant can be seen on video shoving Laura Kirklin directly in front of her own door with his left hand while holding the knife in his right hand roughly fifteen seconds before he stabbed the victim to death. Defendant's argument essentially asks this court to ignore the fact that he was chasing the victim with a deadly weapon threatening to kill him, then physically battering the victim's grandmother immediately before the victim confronted him, and then jumping on top of the victim when the victim fell and was helpless, stabbing him multiple times.

Our independent review of the record does not support that Defendant proved the requisite mitigating factors by a preponderance of the evidence such

13

that the jury was clearly wrong in returning a verdict of second degree murder instead of manslaughter. To the contrary, the evidence clearly indicates that Defendant threatened the victim and stabbed the victim multiple times after chasing and threatening to kill him. We find that there was sufficient evidence to convict Defendant of second degree murder, and the jury was not clearly wrong in rejecting the responsive verdict of manslaughter. Accordingly, this assignment of error lacks merit.

*Assignment of Error Two: Challenge for Cause*

Defendant asserts that the trial court erred in denying defense counsel's challenge for cause of three jurors. Defendant argues that the trial court's denials amount to an abuse of discretion, therefore entitling him to a reversal of his conviction and sentence.

Defendant contends that the challenges for cause were valid because each juror showed some form of partiality. Louisiana Code of Criminal Procedure Article 797 governs the grounds on which either party may challenge a potential juror for cause, and provides in pertinent part:

(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

(4) The juror will not accept the law as given to him by the court[.]

The supreme court recently addressed challenges for cause in *State v. Turner*, 16-1841, p. 37 (La. 12/05/18) 2018 WL 6423990, ___ So.3d ___, ___ and explained that "[i]n ruling on a challenge for cause, the trial court is vested with

14

broad discretion and its ruling will be reversed only when the voir dire record *as a whole* reveals an abuse of discretion."

> The trial judge's refusal to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the prospective juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence.

*State v. Dotson*, 16-473, p. 5 (La. 10/18/17), 234 So.3d 34, 39.

*State v. Dorsey*, 10-216, p. 24 (La. 9/7/11), 74 So.3d 603, 623, *cert. denied*, 566 U.S. 930, 132 S.Ct. 1859 (2012) (citations omitted) further provides:

> Prejudice is presumed when a district court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. Thus, to prove there has been an error warranting reversal of a conviction and sentence, a defendant need only show: 1) the trial court's erroneous denial of the challenge for cause; and 2) the use of all peremptory challenges. In Louisiana, a defendant must also use one of his peremptory challenges curatively to remove the juror or waive any complaint on appeal.

At trial, the trial court denied defense counsel's challenges for cause of three jurors: Penny Bergeron, Richard Nichols, and Alexis Hamilton. Defense counsel subsequently used a peremptory challenge to remove each juror.

*PENNY BERGERON*

Defendant challenged Mrs. Bergeron for cause claiming that she could not be impartial because during voir dire she stated that her sister was raped and murdered by someone who was intoxicated. Defense counsel argues that this case is too close to her past experiences. When questioned by the trial court, Mrs. Bergeron assured the trial court judge that she could put her past experiences aside and be impartial. The trial court denied the challenge for cause and defense counsel subsequently used a peremptory challenge to remove her.

The fact that a prospective juror may have painful memories associated with the subject of a criminal trial is not in and of itself a basis for a challenge for cause.

15

*Turner*, 2018 WL 6423990, ___ So.3d ___; *See also Dotson*, 234 So.3d 34.  Upon review, we find that Mrs. Bergeron was rehabilitated when she assured the court that she could put aside her past experiences and judge the case fairly and impartially.  The trial judge was in the best position to judge the credibility of the juror in question and we find no abuse of discretion.  *See Turner*, 2018 WL 6423990, ___ So.3d ___.

*RICHARD NICHOLS*

Defendant also seeks review of the trial court's denial of a challenge for cause regarding Mr. Richard Nichols.  Defense counsel challenged Mr. Nichols for cause because he indicated that he would give more credibility to law enforcement officers' statements, and because of his background and many years of experience in law enforcement, which included an association with the District Attorney, Todd Nesom.  Mr. Nichols also expressed reservations regarding intoxication as a defense, but ultimately stated that he would follow the law as given to him by the court even if he disagreed with the defense.  When questioned by the trial court, Mr. Nichols firmly stated that he would decide based on evidence and that his law enforcement background would not affect his decision.  The trial court further inquired about Mr. Nichol's reservations as to the intoxication defense, to which he replied that he would follow the law as given to him by the court regarding intoxication as a defense, insanity as a defense, and regarding the credibility of law enforcement witnesses.  The trial court denied the challenge for cause, finding Mr. Nichols' responses to be indicative of a rehabilitated juror that could be fair and impartial.

Defendant cites to *State v. Madison*, 345 So.2d 485 (La.1977), for the premise that service of a member of law enforcement on a criminal jury must be scrutinized and may warrant granting a challenge for cause.  We find the present

16

case distinguishable from *Madison*, 345 So.2d 485, as Mr. Nichols indicated that he could be fair and impartial despite his former law enforcement duties. The trial court's denial of a challenge for cause of a potential juror for past employment in the field of law enforcement is not an abuse of discretion when the potential juror can articulate to the court that he or she can distinguish those past duties from their duty to be fair and impartial as a juror. *See State v. Bolden*, 95-749 (La.App. 3 Cir. 4/17/96), 680 So.2d 6, *writ denied*, 96-1272 (La. 11/22/96), 683 So.2d 286; *State v. Allen*, 93-838 (La.App. 5 Cir. 5/31/94), 638 So.2d 394. We find that the trial court did not abuse its discretion in denying the challenge for cause of Mr. Nichols.

*ALEXIS HAMILTON*

Defendant asserts that the trial court erred in denying his challenge for cause of Ms. Alexis Hamilton. Ms. Hamilton stated that she could not accept a voluntary intoxication defense because she believes that a person knows what he is doing when he ingests the substance, basing this reasoning on her father's conviction for killing someone in a head-on collision while drunk driving. Defense counsel argued that the opinions expressed by Ms. Hamilton illustrate her inability to be impartial. Upon further inquiry by the trial court, Ms. Hamilton expressed her ability to be open minded, and the trial court denied the challenge for cause.

Because the record as a whole supports the trial court's finding that Ms. Hamilton could be open minded to the intoxication defense, the trial court acted within its great discretion in denying Defendant's challenge for cause.

Accordingly, Defendant's second assignment of error lacks merit.

***Pro se Assignment of Error: Defense Counsel's Violation of Client Autonomy***

In his first pro se assignment of error, Defendant asserts that his trial counsel violated Defendant's right to autonomy when he conceded Defendant's guilt during closing arguments, contrary to the United States Supreme Court's holding

17

in *McCoy v. Louisiana*, ___ U.S. ___, 138 S.Ct. 1500 (2018). Specifically, Defendant alleges that his trial counsel "switched tactics" when he told the jury that Defendant had the specific intent to kill the victim, but under the facts presented, they should return a verdict of manslaughter, but only if they did not accept the affirmative defenses first presented to them.

Defendant argues that because he pled not guilty by reason of insanity coupled with an intoxication defense, his defense counsel violated *McCoy*, ___ U.S. ___, 138 S.Ct. 1500, by making an admission of specific intent when he presented an alternative defense of manslaughter. In *McCoy*, ___ U.S. at ___, 138 S.Ct. at 1505, the Supreme Court found that an attorney cannot concede guilt for a client who claims he is innocent of the crime:

> We hold that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Guaranteeing a defendant the right "to have the *Assistance* of Counsel for *his* defence," the Sixth Amendment so demands. With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.

Following the holding and reasoning in *McCoy*, ___ U.S. ___, 138 S.Ct. 1500, the Louisiana Supreme Court in *State v. Horn*, 16-559 (La. 9/7/18), 251 So.3d 1069, held that the trial court's allowance of counsel to concede the defendant's guilt over the objections of the defendant was considered a structural error, which accorded the defendant a new trial without any need to show prejudice.

We find Defendant's case is clearly distinguishable from *McCoy* and *Horn*. In addition to slight factual differences in both *McCoy* and *Horn*,[5] both courts

---

[5] The *Horn* and *McCoy* defendants pled "not guilty." Furthermore, the defendants in the cases cited argued they had no involvement in the crimes, murder in *McCoy* and burglary in *Horn*. In this case, Defendant's killing of the victim was captured on video and witnessed by several people.

noted that the defense counsel's decision to admit guilt was actively made over the explicit objection of the defendant. In the present case, Defendant offered no objection to defense counsel's alternative defense of manslaughter. Defendant's trial counsel stated in his closing argument:

> [S]econd degree murder has responsive verdicts. And if you don't want to go along with the justification defense, or the intoxication defense, or the insanity defense, you still have to look at all the elements for each one of those responsive verdicts . . . . But, the fact of the matter is Ralph Johnson was provoked. And that provocation led to, like I said, if you don't want to go with the insanity plea or the intoxication plea, it led to him having the specific intent to kill. So, if our affirmative defenses are not to your satisfaction, at [worst] Ralph is guilty of manslaughter, not second degree murder.

Defendant asserts that these arguments by trial counsel amount to an admission of Defendant's guilt to the charge of second degree murder. We disagree. We find that counsel's arguments are not a specific admission of Defendant's specific intent, but are clearly presented as an alternative argument for the jury to consider a responsive verdict of manslaughter. Defense counsel's argument thus properly addresses a statutorily provided responsive verdict to second degree murder. *See* La.Code Crim.P. art. 814. Furthermore, nothing in the record indicates Defendant ever objected to defense counsel's alternative argument asserting the responsive verdict of manslaughter. Defendant's first pro se assignment of error lacks merit.

### Pro Se Assignment of Error 2: State's Peremptory Challenge Based on Race Violates the Constitutions of the United States and Louisiana

In his second pro se assignment of error, Defendant argues that the trial court erred in denying defense counsel's challenge of racial discrimination in jury selection under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986).

"On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. 472,

19

477, 128 S.Ct. 1203, 1207 (2008) (citations omitted). During voir dire, the State used its second peremptory challenge on Mr. Byron Jones and defense counsel asked the record to reflect that Mr. Jones was African-American. After the State used its fourth peremptory challenge to excuse Mr. Charles Allen, another African American, defense counsel asked for race-neutral reasons for both men's removal.

The trial court found, and Defendant does not challenge on appeal, that the State gave a valid medical reason for removing Mr. Allen, as his glaucoma could make viewing exhibits difficult. However, with regard to Mr. Byron Jones, the State's reason for challenging Mr. Jones was a belief that Mr. Jones was disinterested and not paying attention. The trial court ruled that a race-neutral reason was given. Defendant asserts the trial court's decision to deny his *Batson* challenge as to Mr. Jones was erroneous. In *State v. Nelson*, 10-1724, p. 9 (La. 3/13/12), 85 So.3d 21, 28-29, the supreme court noted:

> The Court in *Batson* outlined a three-step test for determining whether a peremptory challenge was based on race. Under *Batson* and its progeny, the opponent of a peremptory strike must first establish a prima facie case of purposeful discrimination. Second, if a prima facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination.

Defendant contends that the trial court erred in failing to carry out the third step of the *Batson* analysis by not determining whether the State was being intentionally discriminatory when exercising its peremptory challenge of Mr. Jones. Further, Defendant contends that the trial court erred in failing to personally evaluate the juror's demeanor to determine if the juror exhibited the behavior that is the claimed basis for the State's strike.

> Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility, and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge[.]" In addition, race-neutral reasons for peremptory

challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie "'peculiarly within a trial judge's province,'" and we have stated that "in the absence of exceptional circumstances, we would defer to [the trial court][.]"

*Snyder*, 552 U.S. at 477 (citations omitted).

The remaining step of the *Batson* analysis was for the trial court to "determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination." *Nelson*, 85 So.3d at 29.

The State offered that its reason for removing Mr. Jones was that he was inattentive. *See Snyder,* 552 U.S. 472. Although the trial court stated it had not noticed Mr. Jones being inattentive, it nonetheless found the State had offered a valid race-neutral reason for removing Mr. Jones from the jury. Because the State gave a jurisprudentially-recognized, race-neutral reason for its peremptory challenge of Mr. Jones, no further evaluation or explanation is needed from the trial court unless the trial judge makes a finding that the prosecutor's reasons were not credible.

In *State v. Sparks*, 88-17, p. 48 (La. 5/11/11), 68 So.3d 435, 474, *cert. denied*, 566 U.S. 908, 132 S.Ct. 1794 (2012), the supreme court stated the following:

After the prosecutor articulated his reasons for the strike, the trial court simply noted and overruled the defendant's objection.

At the second step of the *Batson* inquiry, the issue is the facial validity of the prosecutor's explanation. *Hernandez* [*v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866]; *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769[,] 1771, 131 L.Ed.2d 834 (1995) (*per curiam*). Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Id.*

The defendant contends that because the trial judge did not assess on the record the weight and credibility of the prosecutor's explanation and articulate a reason for accepting the prosecution's reason as race-neutral, the trial judge did not complete the third step of the *Batson* framework, resulting in an inability for there to be meaningful review. To the contrary, although the better practice is for the trial court to establish for the record its evaluation of the justification offered to rebut the inference of purposeful discrimination, the trial court here did not err in failing to rule expressly, when the reason given by the State was facially race-neutral, self-explanatory and related to the case. There was no discriminatory intent inherent in this explanation.

The State's proffered explanation, that Mr. Jones was inattentive during voir dire, is "facially race-neutral, self-explanatory and related to the case." *Id.* In light of *Sparks*, the trial court's finding the State gave a race-neutral reason for striking Mr. Jones was sufficient to satisfy the *Batson* analysis in this instance. Accordingly, this assignment of error lacks merit.

## CONCLUSION

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

22